996 So.2d 501 (2008)
Fred RUPPERT
v.
GEORGE KELLETT & SONS, INC. et al.
No. 08-CA-182.
Court of Appeal of Louisiana, Fifth Circuit.
September 30, 2008.
*503 Martin L. Morgan, Attorney at Law, Mandeville, LA, for Appellant Fred Ruppert.
John I. Hulse, IV, Shawn M. Roussel, Attorneys at Law, New Orleans, LA, for Appellant George Kellett & Sons, Inc.
Charles A. Cerise, Jr., Christine S. Fortunato, Attorneys at Law, New Orleans, LA, for Appellee KyKenKee, Inc.
Panel composed of Judges EDWARD A. DUFRESNE, JR., MARION F. EDWARDS, and FREDERICKA HOMBERG WICKER.
FREDERICKA HOMBERG WICKER, Judge.
This action for damages arises from an alleged sale of defective pilings. Asserting its nonresident status, the alleged manufacturer/defendant/third party defendant KyKenKee, Inc., filed exceptions of vagueness, lack of personal jurisdiction and improper venue. Plaintiff Fred Ruppert and defendant/third party plaintiff George Kellett and Sons, Inc. have appealed from a June 29, 2007 judgment that granted KyKenKee's exceptions, dismissing all claims against KyKenKee without prejudice. The question presented to the court is whether the assertion of personal jurisdiction by Louisiana over Alabama nonresident KyKenKee meets the requirements of due process. Finding that it does not, we affirm.

Facts
Mr. Ruppert, a Montana resident, filed an action in redhibition against Kellett and KyKenKee. He alleged that KyKenKee manufactured defective pilings that Mr. Ruppert purchased from Kellett, a Louisiana company. Mr. Ruppert alleged that the pilings were to be used in the construction of his Waveland, Mississippi home. KyKenKee, an Alabama corporation, raised exceptions of lack of personal jurisdiction, improper venue, and vagueness. The trial judge granted the exceptions but gave Mr. Ruppert time to amend his petition. Mr. Ruppert amended his petition. He added Great Southern Wood Preserving Company as a defendant. He alleged that in order to fill his order, Kellett purchased the posts from Great Southern. Upon information and belief, KyKenKee manufactured the posts and these were treated by Great Southern.
Kellett filed an answer to Mr. Ruppert's petition admitting that it is a Louisiana corporation doing business in Louisiana with its registered office in Jefferson Parish. It admitted that in the process of filling Mr. Ruppert's order, it ordered treated posts from Great Southern, an Alabama corporation. Kellett believed that KyKenKee, an Alabama corporation, manufactured the posts at its sawmill in Alabama. Kellett filed a cross claim against KyKenKee and a third party demand against Great Southern.
In response to the amended petition and Kellett's cross claim, KyKenKee reurged its exceptions.
Great Southern answered the third party demand. It denied liability. It also denied, because of lack of sufficient information to justify a belief, the allegations that Kellett ordered the posts from Great Southern, that Great Southern treated the lumber, and that the posts were manufactured by KyKenKee.
KyKenKee's exceptions were heard a second time on June 15, 2007. The trial judge did not conduct a contradictory evidentiary hearing on the exceptions. *504 Instead, the matter was submitted on affidavits and attachments, pleadings, arguments, and briefs.
KyKenKee and Mr. Ruppert each submitted affidavits.
KyKenKee produced an affidavit from Varner Kyle Burt. Mr. Burt attested the following:
He is the president of KyKenKee. He is familiar with KyKenKee's corporate status, operations, and business activity. KyKenKee is an Alabama Corporation with its registered office in Vance, Alabama. KyKenKee does not have an agent for service of process appointed in Louisiana. It does not own property in Louisiana. KyKenKee is a lumber manufacturer that wholesales its products primarily to local Alabama lumber treatment plants and retailers. KyKenKee does not own or rent an office or facility in Louisiana. It does not have a registered business office in Louisiana. It does not advertise in Louisiana's newspapers, publications, or on television channels. It has never registered or qualified to, and has not been licensed to conduct business in Louisiana. It does not employ any personnel in Louisiana to conduct its business. It has never maintained bank accounts of any kind in Louisiana. KyKenKee has never held meetings of officers, directors, or shareholders in Louisiana. It has never entered into any contractual relationships with any entity domiciled in Louisiana. It has never executed any contract instruments in Louisiana. It has never filed suit in Louisiana. Until the present, it has never been sued in Louisiana. It has never transacted business in Louisiana. It has never caused injury or damage by an offense or quasi offense committed through an act or omission in Louisiana.
Mr. Ruppert attested that he purchased the pilings from Kellett as reflected in an attached invoice. The invoice reflects that on March 23, 2006 Mr. Ruppert ordered from Kellett various sizes and quantities of treated pine, which were shipped to him. The invoice reflects that Kellett is located in Metairie, Louisiana. In his affidavit, Mr. Ruppert attested that he purchased the pilings from Kellett in Jefferson Parish. To the best of his knowledge, KyKenKee manufactured the pilings. He further attested that on or about June 30, 2006 persons who claimed to be representatives of KyKenKee inspected the pilings and prepared a report addressed to KyKenKee of their findings. He attached the report. The report is a letter from Southern Pine Inspection Bureau Inc. of Pensacola Florida to KyKenKee in Alabama. The letter describes an inspection of the timber. There is no indication in the letter that KyKenKee manufactured the inspected timber.
In response to the inspection letter, KyKenKee argued that it acted as a responsible business owner. When KyKenKee learned of the possible allegations, it sent a third-party inspector to Mississippi where the damages occurred to the construction site.
According to KyKenKee, it does have some clients that are from Mississippi and Florida but no clients whose businesses are registered in Louisiana.
Mr. Ruppert asked KyKenKee to admit or deny certain requests. In response to Mr. Ruppert's request that KyKenKee admit or deny its products were sold in Louisiana, KyKenKee denied the allegation, stating that it does not sell its timber products in Louisiana, referring to Mr. Burt's affidavit. Mr. Ruppert also asked KyKenKee to admit or deny that its products are sold in Louisiana by third parties. In response, KyKenKee stated that it could neither admit nor deny the request. KyKenKee explained that after making a *505 reasonable inquiry into the subject matter of that request, the information known or readily attainable by KyKenKee was insufficient to allow it to admit or deny this request. KyKenKee referred to Mr. Burt's affidavit wherein Mr. Burt stated KyKenKee does not sell its products in Louisiana. KyKenKee explained that it does not have access to the records of "third parties" and is not privy to all activities of "third parties" and therefore could not state whether "third parties" resell KyKenKee's products in Louisiana.

Analysis
Kellett and Mr. Ruppert assign as error the trial judge's granting the declinatory exception of lack of personal jurisdiction. They also assert that the trial judge erred in granting the declinatory exception of improper venue. The trial judge granted the venue exception solely on the basis that there was no personal jurisdiction. Mr. Ruppert additionally assigns as error the trial judge's granting KyKenKee's exception of vagueness as to his amended petition.
Our finding that the trial judge properly granted the exception of lack of personal jurisdiction abrogates the need to address Mr. Ruppert's assigned error regarding the granting of the vagueness exception and the need to address the appellants' assigned error regarding venue.
The Louisiana long-arm statute pertinently provides circumstances under which a Louisiana court may exercise personal jurisdiction over a nonresident defendant as follows:
A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
(1) Transacting any business in this state.
(2) Contracting to supply services or things in this state.
(3) Causing injury or damage by an offense or quasi offense committed through an act or omission in this state.
(4) Causing injury or damage in this state by an offense or quasi offense committed through an act or omission outside of this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives revenue from goods used or consumed or services rendered in this state.
....
(8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.
B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.
In 1987, the Louisiana Legislature added R.S. 13:3201(B). "The 1987 amendment was designed to insure that the long-arm jurisdiction of a Louisiana court extends to the limits allowed by due process. See Official Comment Acts 1987, No. 418." Superior Supply Co. v. Associated Pipe and Supply Co., 515 So.2d 790, 792 (La. 1987). Meeting constitutional requirements of due process obviates the necessity of an inquiry into whether the defendant's conduct falls within the reach of the long-arm statute. Id. "Now, under the express terms of the present long-arm statute, the sole inquiry into jurisdiction *506 over a nonresident is a one-step analysis of the constitutional due process requirements." Id. "If the assertion of jurisdiction meets the constitutional requirements of due process, the assertion of jurisdiction is authorized under the long-arm statute." Id., citing Petroleum Helicopters, Inc. v. Avco Corp., 513 So.2d 1188, 1192 (La.1987).
"Due process requires that in order to subject a nonresident defendant to a personal judgment, the defendant must have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 105 (La.1991). Accord, A & L Energy, Inc. v. Pegasus Group, 00-3255 (La.6/29/01), p. 4, 791 So.2d 1266, 1270, cert. denied, Pegasus Group v. A & L Energy, Inc., 534 U.S. 1022, 122 S.Ct. 550, 151 L.Ed.2d 426 (2001) quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Thus, there are two parts to the due process test"minimum contacts" and "traditional notions of fair play and substantial justice." A & L Energy, Inc., 00-3255 at 4-5, 791 So.2d at 1270-71.
The "minimum contacts" prong is satisfied by a single act or actions by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Southeast Wireless Network, Inc. v. U.S. Telemetry Corp., 06-1736, p. 4 (La.4/11/07), 954 So.2d 120, 125 citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). "Purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. Id. at 5, 954 So.2d at 125, 954 So.2d at 125, citing Ruckstuhl v. Owens Corning Fiberglas Corporation, 98-1126 (La.4/13/99), 731 So.2d 881, cert. denied, 528 U.S. 1019, 120 S.Ct. 526, 145 L.Ed.2d 407 (1999). "Purposeful availment" ensures that the moving party will not be haled into a jurisdiction solely as a result of a random, fortuitous or attenuated contact, or by the unilateral activity of another party or a third person. Id. (citations omitted).
The Southeast Wireless Network court explained:
If the defendant deliberately engages in significant activities within a state, or creates continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there. Because his activities are shielded by the benefits and protections of the forum's laws, it is presumptively not unreasonable to require the defendant to submit to the burdens of litigation in that forum.
Id., citing de Reyes, supra, 586 So.2d at 106.
The high court explained:
Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction. World-Wide Volkswagen Corp. v. Woodson, 444 U.S., 286 at 295, 100 S.Ct., 559 at 566, 62 L.Ed.2d 490 (1980). Instead, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Id., at 297, 100 S.Ct., at 567. In defining when it is that a potential *507 defendant should "reasonably anticipate" out-of-state litigation, the Court frequently has drawn from the reasoning of Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-1240, 2 L.Ed.2d 1283 (1958):
"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (footnote omitted).
The second part of the due process test centers around the fairness of asserting jurisdiction over the defendant. Even when minimum contacts exist, the exercise of personal jurisdiction over a nonresident defendant will fail to satisfy due process requirements if the assertion of jurisdiction offends "traditional notions of fair play and substantial justice." A & L Energy, supra, 00-3255 at 4, 791 So.2d at 1271, citing International Shoe, 326 U.S. at 316, 66 S.Ct. at 158.
The Louisiana Supreme Court, like the United States Supreme Court, has recognized a distinction between two types of personal jurisdiction"general" and "specific" jurisdiction. de Reyes, supra, 586 So.2d at 105. Specific jurisdiction over a nonresident defendant is appropriate when that defendant has purposefully directed its activities at residents of the forum state and the litigation results from alleged injuries that arise out of or relate to those activities. A & L Energy, supra, 00-3255 at 5-6, 791 So.2d at 1271 citing Burger King, 471 U.S. at 473, 105 S.Ct. at 2182 n. 15. In contrast, general jurisdiction will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiffs cause of action, are continuous and systematic. Id.
Here, Kellett argues, as it did below, that both types of personal jurisdiction are present. Kellett argues that the trial judge erred in determining that minimum contacts do not exist when KyKenKee knowingly placed products into the interstate stream of commerce that were specifically directed to Louisiana. Kellett and Mr. Ruppert state in brief that KyKenKee has never denied it manufactured the posts. And Kellett states that KyKenKee has never denied that the posts were sold to Kellett in Louisiana.
Kellett contends that although KyKenKee denied it is doing business in Louisiana, it admitted it engages in interstate commerce specifically to clients in Mississippi and Florida. Mr. Ruppert asserts that the facts of this case fit Section A(8) of the long arm statute. He argues that KyKenKee manufactured a component part of a product that caused damages in redhibition in Louisiana. Damages occurred by virtue of the sale in Louisiana. KyKenKee could have reasonably foreseen that the product would be placed in the stream of commerce and it might eventually be found in this state by reason of the product's nature and KyKenKee's marketing practices. Finally, he argues that the exercise of jurisdiction does not offend constitutional due process standards, relying on McBead Drilling Co. v. Kremco, Ltd., 509 So.2d 429 (La.1987).
The trial judge did not conduct a contradictory evidentiary hearing on the exceptions. Instead, the matter was submitted on affidavits and attachments, *508 pleadings, arguments, and briefs. If there had been a contradictory evidentiary hearing, the party asserting jurisdiction would have had to prove facts in support of the showing that jurisdiction was proper by a preponderance of the evidence. de Reyes v. Marine Management and Consulting, Ltd., 586 So.2d 103, 109 (La.1991) (There was no contradictory evidentiary hearing where the record on the exception was comprised of pleadings, memoranda, and discovery depositions). When the trial court decides the jurisdictional issue without a contradictory evidentiary hearing, as it has done in the present case, the burden of the non-moving party is relatively slight and allegations of the complaint and all reasonable inferences from the record are to be drawn in favor of the non-moving party. Id., citing La.C.C.P. arts. 925, 930; American Greetings Corp. v. Cohn, 839 F.2d 1164 (6th Cir.1988); Poston v. American President Lines, Ltd., 452 F.Supp. 568 (S.D.Fla.1978).
de Reyes relied in part on American Greetings Corp. The federal court explained that when the trial court decides the jurisdictional issue without a contradictory evidentiary hearing, the non-moving party should be required only to make a prima facie case of jurisdiction. American Greetings Corp., 839 F.2d at 1168-69 (citations omitted) (quoting Welsh v. Gibbs, 631 F.2d 436, 438-39 (6th Cir.1980), cert. denied, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981)).
Considering all reasonable inferences from the record in favor of the non-moving party and Mr. Burt's uncontroverted affidavit describing KyKenKee's business operations, it only remains for this court to determine whether under the facts presented, KyKenKee had sufficient minimum contacts with Louisiana to subject it personally to the jurisdiction of the courts of this state.
Factual findings underlying the judgment on an exception of lack of personal jurisdiction are reviewed for manifest error. Southeast Wireless Network, Inc. v. U.S. Telemetry Corp., 06-1736 (La.4/11/07), 954 So.2d 120, 125. However, the application of the facts to established rules of law is a legal question, and thus, the legal issue of personal jurisdiction over a non-resident by a Louisiana court is subject to de novo review. Id. (citation omitted).
In this case, the trial judge made no factual findings. The determination by the trial court that KyKenKee does not have the minimum contacts necessary to subject it to the personal jurisdiction of a Louisiana court involves the application of the facts to an established rule of law, and is thus a legal question. Therefore, manifest error does not apply and we review this matter de novo.
Kellett argues that A.O. Smith is directly applicable. In that case, the owners of alleged defective water heaters filed a class action suit against the "Tank Manufacturers," alleging that these manufacturers sold them defective water heaters. The plaintiffs also alleged that the component part dip tubes that were manufactured by Perfection were defective. As a result of a settlement, the tank manufacturers were assigned the plaintiffs' claims against Perfection. The tank manufacturers also asserted direct causes of action against Perfection and its parent company. Perfection and its parent company responded to this suit by urging the exception of lack of personal jurisdiction. The trial judge sustained the exception as it applied to the assigned claims of Louisiana residents. He overruled the exception as to the assigned claims of non-Louisiana residents and as to the tank manufacturers' *509 direct causes of action. A.O. Smith, 00-2485 at 1-2, 778 So.2d at 617.
Perfection was not a Louisiana corporation nor was it licensed in Louisiana. The dip tubes were shipped to Louisiana in the form of a component part of a water heater. Perfection had other dealings with Louisiana through delivery of other products. The Tank Manufacturers asserted that they sold hundreds of thousands of water heaters in Louisiana with Perfection's dip tubes. Some of the manufacturers purchased dip tubes exclusively from Perfection. One manufacturer had an exclusive agreement with Perfection for a non-dip tube product used in its water heaters. The Tank Manufacturers asserted that Perfection advertises nationally in trade journals and continues to maintain a national toll free telephone number. A.O. Smith, 00-2485 at 3, 778 So.2d at 617-18.
The Fourth Circuit found sufficient minimum contacts with Louisiana to warrant personal jurisdiction based on specific jurisdiction. A.O. Smith, 00-2485 at 5, 778 So.2d at 619.
There, unlike the present case, the dip tube manufacturer and the end product water heater manufacturer had a close relationship. The water heater manufacturers employed large scale marketing nationwide of its water heaters. Perfection could not assert it was unaware of the nationwide marketing. The court explained: "The defendant could reasonably anticipate litigation in this forum because it understood its dip tubes were a significant component part of water heaters marketed in every state of the union." A.O. Smith, 00-2485 at 6, 778 So.2d at 619.
Kellett contends that like the dip tube manufacturer, KyKenKee produced a product it knew was being shipped to and sold in another state and KyKenKee could reasonably expect to be haled into court in those states for an alleged defective product. Kellett relies on the fact that KyKenKee sells its products throughout Alabama, as well as in Florida and Mississippi. Kellett points to the need for lumber as a result of Hurricane Katrina as a factor in making KyKenKee aware that its lumber products were being shipped to Louisiana. As KyKenKee notes, there is, however, no indication that KyKenKee advertised nationally as did the dip tube manufacturer. Furthermore, hundreds of thousands of water heaters were sold in Louisiana with dip tubes. This is not the case here. There is no indication that large quantities of KyKenKee's lumber were sold by distributors to Louisiana residents. There is also no indication that Great Southern had an agreement with KyKenKee to sell KyKenKee's products in other states.
Kellett and Mr. Ruppert also argue that McBead Drilling Co. v. Kremco, Ltd., 509 So.2d 429 (La. 1987) is similar. KyKenKee disagrees.
In McBead, supra, 509 So.2d at 429-30, 431, 433, an Arkansas Corporation contracted with Dickirson, a West Virginia corporation to purchase a drilling rig. Dickirson in turn purchased the basic rig from Kremco, a Canadian company, and added its manufactured substructure. Dickirson delivered the rig to McBead in Arkansas. Afterwards, McBead moved the rig to Louisiana for use in its drilling operations. The rig collapsed in Louisiana. Dickirson excepted to jurisdiction. Evidence at the hearing established the Dickirson was in the business of selling drilling rigs and similar equipment. It had sold oil field equipment in approximately 12 states and in several foreign countries. But Dickirson had never made a sale to a Louisiana resident; it did not solicit business in Louisiana; and it did not do any advertising which would be expected to reach Louisiana. The court found that this case fit squarely in Section A(8) *510 of the long arm statute. It found that the exercise of jurisdiction did not violate constitutional due process.
McBead is distinguishable. In McBead, there were "significant affiliating circumstances" in that Dickirson manufactured component parts of an alleged defective rig and sold it to an Arkansas drilling company which was located in the Arkansas-Louisiana-Texas triangle of oil drilling activity. This factor was a significant affiliating circumstance. Further, Dickirson's conduct in its business operations and the nature of its manufactured products were such that it should have reasonably anticipated being haled into court in Louisiana for alleged design or manufacturing defects.
Finally, Kellett asserts there is general jurisdiction because KyKenKee made no attempt to limit the ultimate distribution and sale of its product. Thus, it was foreseeable that its raw lumber would be treated and sold to enter the interstate stream of commerce. Kellett relies on Bean Dredging Corp. v. Dredge Technology Corp., 744 F.2d 1081 (5th Cir.1984); and, Haley v. Wright Mfg. Co., 651 F.Supp. 116 (M.D.La.1986). We have examined each of those cases carefully, and after so doing, feel that they are distinguishable on their facts from the instant case.
In Bean Dredging, the Federal Fifth Circuit found there was personal jurisdiction over a Washington manufacturer in a negligence and strict liability action for defects in a dredge in Louisiana. In that case, the Washington manufacturer introduced thousands of steel castings into the stream of commerce, evidencing no attempt to limit the states in which castings would be sold and used as component parts. 651 F.Supp. at 1085. In Haley, the Middle District Court of Louisiana found personal jurisdiction over an Illinois corporation that placed alleged defective orthopedic surgical implants into interstate commerce without limiting the ultimate distribution or sale. The corporation placed millions of its products into the stream of commerce and had an interest in reaching as broad a market as possible. 651 F.Supp. at 120.
In the present case, there is no showing that KyKenKee had a relationship with Great Southern whereby Great Southern would treat and sell KyKenKee's raw lumber for distribution to other states. Great Southern's contacts with Louisiana cannot be imputed to KyKenKee. Further, there was no evidence that KyKenKee engaged in marketing practices demonstrating an interest in reaching as broad a market as possible. KyKenKee sold primarily in Alabama and limited its sales to Alabama, Mississippi and Florida. It did not sell a component part of a product that in turn could be foreseeably distributed in the interstate stream of commerce.
Under the de Reyes standard for a noncontradictory non-evidentiary hearing, a review of the record indicates that Kellett and Mr. Ruppert failed to meet their burden of establishing personal jurisdiction. Even if, as alleged, KyKenKee is the manufacturer of the pilings, Kellett and Mr. Ruppert have not established that KyKenKee has the requisite minimum contacts. According to Mr. Burt's uncontroverted affidavit, there is no showing that KyKenKee purposefully availed itself of Louisiana.
Accordingly, we affirm the June 29, 2007 judgment that granted KyKenKee's exceptions, dismissing all claims against KyKenKee without prejudice.
AFFIRMED.