JONATHAN MURRAY     *     NO. 2024-CA-0787

VERSUS     *

    **COURT OF APPEAL**

UNIVERSAL PARKING AND     *
TRANSPORTATION, LLC     **FOURTH CIRCUIT**

    *

    **STATE OF LOUISIANA**

* * * * * * *

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-05534, DIVISION "B"
Honorable Marissa Hutabarat, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge
Dale N. Atkins)

Cesar R. Burgos
Robert J. Daigre
BURGOS & ASSOCIATES, LLC
3535 Canal Street
New Orleans, LA 70119

       COUNSEL FOR PLAINTIFF/APPELLANT, Jonathan Murray

Matthew A. Sherman
Nicholas R. Varisco
CHEHARDY, SHERMAN, WILLIAMS, RECILE, & HAYES, L.L.P.
One Galleria Boulevard, Suite 1100
Metairie, LA 70001

       COUNSEL FOR DEFENDANT/APPELLEE, Universal Parking and
Transportation, LLC

**REVERSED IN PART; AFFIRMED IN PART; VACATED IN PART AND
REMANDED WITH INSTRUCTIONS
JULY 8, 2025**

DNA

PAB

TGC

The underlying dispute in this matter is about unpaid wages and a request for a mandamus for access to financial records; and the present appeal concerns enforcement of a forum selection clause in an agreement between the parties. Appellant, Jonathan Murray ("Mr. Murray"), seeks review of the trial court's August 28, 2024 judgment, which sustained the "Declinatory Exception of Lack of Personal Jurisdiction and Declinatory Exception of Improper Venue" filed by Appellee, Universal Parking and Transportation, LLC ("Universal"). The judgment also dismissed Mr. Murray's claims without prejudice. For the following reasons, we reverse in part, affirm in part, vacate in part, and remand this matter for further proceedings consistent with this Opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### Petition for Damages

On June 21, 2024, Mr. Murray filed a "Petition for Unpaid Wages and Mandamus" ("Petition") in Orleans Parish Civil District Court and listed Universal as the sole defendant. Mr. Murray contended in his Petition that Universal was "a Louisiana limited liability company with its registered office in the Parish of Orleans." According to Mr. Murray, he was both an employee and an "Operator

1

Member"[1] of Universal beginning in September 2021; but Universal terminated his employment "without cause, effective December 19, 2022." Mr. Murray explained that he and other Operator Members, who were also employees of the company like him, agreed to defer some of their salary from September through December 2021 "to avoid financial hardship to [Universal]." Specifically, Mr. Murray stated he agreed to defer salary in the total amount of $14,445.61, yet he ultimately did not receive that amount within the time limitations set forth in the Louisiana Wage Payment Act ("LWPA").[2] Mr. Murray alleged that, "despite amicable demand," he still had not been paid as of the filing of his Petition. Accordingly, Mr. Murray asserted he was entitled to the unpaid wages, penalty wages, and attorney fees under the LWPA. In his Petition, Mr. Murray asserted venue was proper in Orleans Parish Civil District Court under La. C.C.P. art. 42 because Universal's registered

---

[1] In his Petition, Mr. Murray referred to himself as a "Member/Owner" of Universal. However, the subject agreement between Mr. Murray and Universal referred to him as one of seven "Operator Members." Accordingly, this Opinion will use the phrase "Operator Member(s)" instead.

[2] The LWPA is codified at La. R.S. 23:631, et seq. The law provides, in pertinent part:

> A. (1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

> (b) Upon the resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by the hour, day, week, or month, on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

La. R.S. 23:631(A).

office was in Orleans Parish[3] and proper under La. R.S. 23:639 because he performed the work giving rise to his claim for unpaid wages in Orleans Parish.[4]

Additionally, Mr. Murray requested a writ of mandamus pursuant to La. C.C.P. art. 3861 regarding certain financial records.[5] To this end, Mr. Murray alleged that under Universal's Limited Liability Company Agreement ("LLC Agreement"), not only did the company have to maintain financial records and books, but he was permitted access to those records as an Operator Member. Nonetheless, and "[d]espite amicable demand," Mr. Murray asserted that Universal provided him with only certain records and "failed and/or refused to provide [him] with . . . additional financial records." In sum, Mr. Murray claimed he was entitled to a writ of mandamus directing Universal to either provide him with copies of the financial records; grant him access to the records during ordinary business hours; or to show cause why it should not be ordered to do so.

## Amending Petition

On February 6, 2024, Mr. Murray filed a "Supplemantal [sic] and Amending Petition for Unpaid Wages and Mandamus" ("Amending Petition"). In pertinent part, Mr. Murray explained that Universal actually paid his deferred salary to him on July 27, 2023, i.e., prior to the filing of his Petition. Regardless, Mr. Murray asserted he was entitled to past due wages, reasonable attorney fees, and the costs of the proceedings. Additionally, Mr. Murray reiterated his request for a

---

[3] Louisiana Code of Civil Procedure Article 42 lists the general rules of venue.

[4] Louisiana Revised Statutes 23:639 provides that "[i]n addition to all other locations and courts in which such suit may be appropriate, workmen, laborers, clerks, and all other employees may sue their employers or hirers for any wages or salary due and owing in the district court of the parish where the work was performed."

[5] Louisiana Code of Civil Procedure Article 3861 defines mandamus as "a writ directing a public officer, a corporation or an officer thereof, or a limited liability company or a member or manager thereof, to perform any of the duties set forth in Articles 3863 and 3864."

mandamus regarding Universal's financial records. Again, Mr. Murray alleged that venue was proper in Orleans Parish Civil District Court.

## Exceptions

On June 4, 2024, Universal filed its "Declinatory Exception of Lack of Personal Jurisdiction and Declinatory Exception of Improper Venue" (collectively "Exceptions"), alleging that the trial court lacked personal jurisdiction over Mr. Murray's suit and that he filed suit in the improper venue. To this end, Universal asserted it was clear Mr. Murray's claims constituted allegations of violations of the LLC Agreement. Yet, according to Universal, Mr. Murray and Universal "expressly submitted to the exclusive jurisdiction and venue of the federal and state courts located in the City of Atlanta, State of Georgia" in the LLC Agreement.

Universal attached the LLC Agreement as an exhibit to its memorandum in support of its Exceptions. At the outset, the LLC Agreement listed Mr. Murray as one of the Operator Members of Universal; and Mr. Murray's signature appeared at the end of the LLC Agreement. The LLC Agreement stated that Universal was "formed as a limited liability company under the laws of the State of Delaware . . . by the filing of the Company's Certificate of Formation . . . with the Delaware Secretary of State."

The "Administration" section of the LLC Agreement provides, in relevant part, regarding the company's financial records:

11.3 <u>Reporting Requirements</u>

(a) The Board of Managers shall use commercially reasonable efforts to cause to be delivered to each Member (i) within ninety (90) days after the end of each Fiscal Year, (A) information concerning the Company as shall be necessary for the preparation by such Member of

his, her or its federal income tax return and (B) consolidated annual financial statements of the Company, including a consolidated balance sheet of the Company as of the last day of the most recently completed Fiscal Year and consolidated statements of income and cash flow for the most recently completed Fiscal Year, and (ii) within forty-five (45) days after the end of each quarter (other than the fourth quarter) of each Fiscal Year, consolidated quarterly financial statements of the Company, including a consolidated balance sheet of the Company as of the last day of such quarter and consolidated statements of income and cash flow for such quarter. Each Member shall, or shall use commercially reasonable efforts to cause its employees, agents, representatives or other Affiliates to, prepare and provide to the Board of Managers such information as necessary or reasonably requested by the Board of Managers in connection with the timely preparation and delivery of the information set forth in the preceding sentence.

(Hereinafter "Provision 11.3".) The LLC Agreement also listed the percentage interest of ownership for each Operator Member but did not provide information regarding the salary of those Operator Members who were also employees.

The LLC Agreement also contained the following pertinent provision:

14.15 <u>Jurisdiction; Venue; Waiver of Jury Trial.</u> Each party hereto hereby expressly submits to the exclusive jurisdiction of the federal and state courts located in the City of Atlanta, State of Georgia. Each party hereby irrevocably waives, to the fullest extent permitted by law, any objection that it may have or hereafter have to the laying of the venue in any such proceeding brought in such a court and any claim that any such proceeding brought in such a court has been brought in an inconvenient forum.[6]

Universal asserted that because Mr. Murray signed the LLC Agreement as an employee and as an Operator Member of Universal, he bound himself to the above provision (hereinafter "Provision 14.15"). Further, Universal asserted that Mr. Murray violated Provision 14.15 by filing suit in Orleans Parish. Universal argued that "[p]etitions, like the one in this case, which are filed in violation of forum

---

[6] The provision contains two additional sentences, neither of which is relevant to this appeal.

selection clauses, are properly dismissed on an exception of improper venue and/or personal jurisdiction under [La. C.C.P. arts.] 923, 925, and 932(B)."

**Opposition**

On July 3, 2024, Mr. Murray filed an "Opposition to Exception [sic] of Lack of Personal Jurisdiction and Improper Venue" ("Opposition"). Regarding Universal's Exception of Lack of Personal Jurisdiction (hereinafter "Jurisdiction Exception"), Mr. Murray contended the Louisiana Secretary of State's records contained a company by the name of "Universal Parking and Transportation, LLC," which was registered to do business in Louisiana and was a Louisiana entity, not a Delaware one. In light of that, Mr. Murray asserted it was "axiomatic" that the Orleans Parish Civil District Court has personal jurisdiction over a Louisiana limited liability company like Universal. In support, Mr. Murray attached a certificate from the Louisiana Secretary of State, which listed the following information:

| | |
|---|---|
| **Name:** | UNIVERSAL PARKING AND TRANSPORTATION LLC |
| **Type:** | Limited Liability Company |
| **City:** | New Orleans |
| **Status:** | ACTIVE |
| **Business:** | UNIVERSAL PARKING AND TRANSPORTATION LLC |

The certificate listed the company's domicile address, mailing address, registered agent's address, and officer's address as a location in New Orleans, Louisiana. Mr. Murray further asserted that even if Universal were deemed a Delaware company, the Orleans Parish Civil District Court would still have personal jurisdiction over it

because Universal had substantial contacts with Louisiana. To this end, Mr. Murray stated that Universal operates parking lots in New Orleans.

Turning to Universal's Exception of Improper Venue (hereinafter "Venue Exception"), Mr. Murray did not dispute that the LLC Agreement contained a forum selection clause. However, he argued that enforcement of Provision 14.15 "would be unreasonable and would violate policy expressly declared by the [Louisiana] [L]egislature." With regard to the unreasonableness, Mr. Murray stated, "it would be unreasonable to force two Louisiana residents to litigate this matter in Atlanta." Further, Mr. Murray explained that an entity wholly owned by Universal—Royal Parking, LLC—had a pending lawsuit against Mr. Murray in Louisiana, such that "[i]t would be patently unreasonable and unjust to force [him] to prosecute this lawsuit against [Universal] in Atlanta while having to defend a lawsuit filed by [Universal] in Louisiana."

With regard to the alleged public policy violation, Mr. Murray reiterated that not only was he an Operator Member of Universal but also an employee. In this latter regard, Mr. Murray explained he signed a "Confidentiality and Restrictive Covenant Agreement ("Confidentiality Agreement") and he identified it as his employment agreement with Universal.[7] According to Mr. Murray, however, the LLC Agreement actually required him to sign the Confidentiality Agreement to be an Operator Member of Universal, i.e., he could not enjoy the benefits of the LLC Agreement without signing the Confidentiality Agreement. Because of this requirement, Mr. Murray described the Confidentiality Agreement as "part and

---

[7] In his Opposition, Mr. Murray stated his "status as an employee was established by the express language of the" Confidentiality Agreement, and he described the Confidentiality Agreement as containing non-compete and non-solicitation provisions.

parcel of the" LLC Agreement, such that they must be read together. As argued by Mr. Murray, "any provision in an employment contract or agreement that includes a forum selection clause is null and void under L[a.] R.S. 23:921."[8] Thus, reading the LLC Agreement and the Confidentiality Agreement in conjunction with each other, Mr. Murray described Provision 14.15 of the LLC Agreement as "nothing more than a back-door attempt to enforce a forum selection clause against an employee" by tying it to an employment agreement (the Confidentiality Agreement) contrary to the public policy of Louisiana. Mr. Murray attached the Confidentiality Agreement as an exhibit to his Opposition, but the Confidentiality Agreement is not in the record before this Court.

## Hearing and Judgment

On August 8, 2024, the trial court conducted a hearing on Universal's Exceptions, at which neither party introduced evidence. Counsel for Universal argued that the basis of Mr. Murray's lawsuit was not his employment but rather his rights as an Operator Member of Universal, such that Provision 14.15 applied to his case as a valid forum selection clause. Conversely, counsel for Mr. Murray asserted that Mr. Murray was both an Operator Member and an employee because he had to sign both the LLC Agreement and the Confidentiality Agreement. As such, counsel for Mr. Murray argued that Provision 14.15 could not be enforced

---

[8] Louisiana Revised Statutes 23:921(A)(2) provides:

> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

against Mr. Murray as an employee of Universal because it contravened Louisiana public policy. No live testimony was taken at the hearing.

At the close of the hearing, the trial court agreed with Universal that, pursuant to Provision 14.15, it was an improper venue for Mr. Murray's suit and lacked personal jurisdiction over Universal. Therefore, the trial court orally sustained Universal's Exceptions. On August 28, 2024, the trial court issued its judgment, which granted Universal's Exceptions and dismissed Mr. Murray's Petition without prejudice. Mr. Murray's timely appeal to this Court followed.

## ASSIGNMENTS OF ERROR

In his brief to this Court, Mr. Murray asserts four assignments of error. Specifically, he contends:

1. The Trial Court erred in sustaining the Exception of Lack of Personal Jurisdiction because Universal Parking and Transportation, LLC, is a Louisiana limited liability company formed under Louisiana law and, therefore subject to personal jurisdiction in the courts of this state.

2. The Trial Court erred in erred in [sic] sustaining the Exception of Lack of Personal Jurisdiction because Universal Parking and Transportation, LLC, regularly conducts business in the State of Louisiana and is, therefore, subject to personal jurisdiction in the courts of this state.

3. The Trial Court erred in sustaining the Exception of Improper Venue where that exception is based entirely on a forum selection clause in a contract between an employer and employee.

4. The Trial Court erred in sustaining the Exception of Improper Venue based upon a contractual provision that violates the stated public policy of this state.

Instead of addressing each of Mr. Murray's assignments of error in the four separate sections he has delineated, our discussion will instead focus on: 1) the correctness of the trial court's grant of Universal's Venue Exception; 2) the

9

correctness of the trial court's grant of Universal's Jurisdiction Exception; and 3) the correctness of the trial court's decision to dismiss Mr. Murray's suit without prejudice.

## DISCUSSION

### Venue Exception

*Applicable Standard of Review and Principles*

We begin our analysis of the trial court's grant of Universal's Venue Exception with the applicable standard of review and principles. "Venue means the parish where an action or proceeding may properly be brought and tried under the rules regulating the subject." La. C.C.P. art. 41. Appellate courts review a ruling on an exception of improper venue under the *de novo* standard of review because it presents a question of law. *Senior v. Overlog*, 2024-0541, p. 7 (La. App. 4 Cir. 4/21/25), ___ So.3d ___, ___, 2025 WL 1155979, at *4 (citing *Deaville v. Exxon Mobil Corp.*, 2021-0240, p. 5 (La. App. 4 Cir. 5/3/21), 319 So.3d 381, 385). That is, the "appellate court affords no special weight to the findings of the [trial] court, but exercises its constitutional duty to review questions of law and renders judgment on the record . . . . without deference to the legal conclusions of the [trial court]." *Id.* at pp. 7-8, ___ So.3d at ___, 2025 WL 1155979, at *4 (first and third alterations in original) (first quoting *Deaville*, 2021-0240, pp. 5-6, 319 So.3d at 385; and then quoting *Bruno v. CDC Auto Transp., Inc.*, 2019-1065, pp. 7-8 (La. App. 4 Cir. 6/3/20), 302 So.3d 8, 12). The appellate court's task is to resolve whether "the trial court was legally correct or legally incorrect." *Id.* at p. 8, ___ So.3d at ___, 2025 WL 1155979, at *4 (quoting *Deaville*, 2021-0240, p. 6, 319 So.3d at 385). Though the overall standard of review on an exception of improper venue is *de novo*, if the trial court made any factual findings, then the appellate

10

court considers whether the trial court manifestly erred in these determinations. *Id.* (first citing *Scott Vicknair, LLC v. Robinson*, 2024-0512, p. 8 (La. App. 4 Cir. 3/13/25), ___ So.3d ___, ___, 2025 WL 798593, at \*4; and then citing *Chumley v. White*, 46,479, 46,707, p. 6 (La. App. 2 Cir. 11/9/11), 80 So.3d 39, 42).

Improper venue is one of the objections that a party raises by way of a declinatory exception. La. C.C.P. art. 925(A)(4). When the trial court considers if venue is proper, it must "accept[] the allegations of the plaintiff's petition as true." *Senior*, 2024-0541, p. 8, ___ So.3d at ___, 2025 WL 1155979, at \*4 (quoting *Scott Vicknair, LLC*, 2024-0512, p. 9, ___ So.3d at ___, 2025 WL 798593, at \*5). However, "[i]t is only when no evidence is introduced by the moving party on the trial of an exception [of improper venue] that the allegations of the petition are accepted as true." *Price v. Roy O. Martin Lumber Co.*, 2004-0227, p. 13 (La. App. 1 Cir. 4/27/05), 915 So.2d 816, 825 (citing *Vital v. State of La.*, 522 So.2d 151, 152 (La. App. 4th Cir.1988)). That is, as stated in La. C.C.P. art. 930, "[o]n the trial of the declinatory exception, evidence may be introduced to support or controvert [a declinatory exception], when the grounds thereof do not appear from the petition, the citation, or return thereon." Thus, when the grounds for the objection of improper venue do not appear on the face of the plaintiff's petition, then the defendant-exceptor must support the exception with evidence in order to carry his burden of proof. *Senior*, 2024-0541, pp. 8-9, ___ So.3d at ___, 2025 WL 1155979, at \*4 (citing *Chumley*, 46,479, 46,707, pp. 5-6, 80 So.3d at 42). "If evidence is admitted at" the hearing on an exception of improper venue, then "the exception[] must be resolved on the evidence presented, rather than on the allegations in the [plaintiff's] petition." *Price,* 2004-0227, p. 13, 915 So.2d at 825 (quoting

11

*Exposition Partner, L.L.P. v. King, LeBlanc & Bland, L.L.P.*, 2003-0580, p. 10 (La. App. 4 Cir. 3/10/04), 869 So.2d 934, 941).

If, however, the parties do not introduce evidence at the hearing on the exception of improper venue, then "the court is restricted to the allegations of the petition, which for purposes of the exception are to be accepted as true." *Jackson v. Greenwich Ins. Co.*, 2019-0377, p. 5 (La. App. 4 Cir. 7/31/19), 363 So.3d 396, 401 (quoting *Matthews v. United Fire & Cas. Ins. Co. Doctor Pipe, Inc.*, 2016-0389, p. 4 (La. App. 4 Cir. 3/8/17), 213 So.3d 502, 505). This is true even if the parties attached documents to their memoranda in support of or in contravention of the exception of improper venue because "[d]ocuments attached to memoranda do not constitute evidence and cannot be considered as such on appeal." *Alost v. Lawler*, 2018-1271, p. 6 (La. App. 1 Cir. 5/8/19), 277 So.3d 329, 334 n.4 (quoting *Denoux v. Vessel Mgmt. Servs., Inc.*, 2007-2143, p. 6 (La. 5/21/08), 983 So.2d 84, 88). Thus, if the parties' documents in support of or in contravention of an exception of improper venue were "not properly and officially offered and introduced," they "cannot be considered, even if . . . physically placed in the record." *Id.*

Louisiana Code of Civil Procedure Article 42 establishes the general rules of venue. It provides:

The general rules of venue are that an action against:

(1) An individual who is domiciled in the state shall be brought in the parish of his domicile; or if he resides but is not domiciled in the state, in the parish of his residence.

(2) A domestic corporation, a domestic insurer, or a domestic limited liability company shall be brought in the parish where its registered office is located.

(3) A domestic partnership, or a domestic unincorporated association, shall be brought in the parish where its principal business establishment is located.

(4) A foreign corporation or foreign limited liability company licensed to do business in this state shall be brought in the parish where its principal business establishment is located as designated in its application to do business in the state, or, if no such designation is made, then in the parish where its primary place of business in the state is located.

(5) A foreign corporation or a foreign limited liability company not licensed to do business in the state, or a nonresident who has not appointed an agent for the service of process in the manner provided by law, shall be brought in the parish of the plaintiff's domicile or in a parish where the process may be, and subsequently is, served on the defendant except when service is made pursuant to [La.] R.S. 22:335.

(6) A nonresident, other than a foreign corporation, who has appointed an agent for the service of process in the manner provided by law, shall be brought in the parish of the designated post office address of an agent for the service of process.

La. C.C.P. art. 42. These "general rules of venue" delineated "in La. C.C.P. art. 42" establish that "venue is proper at the 'home base' of the entity sued." *Senior*, 2024-0541, p. 10, ___ So.3d at ___, 2025 WL 1155979, at *5 (quoting *Jackson*, 2019-0377, p. 4, 363 So.3d at 400). Among others, one exception to the general rules of venue occurs when the parties have an agreement containing a valid forum selection clause. *Id.* Additionally, a more specific venue rule is found in the LWPA. Louisiana Revised Statutes 23:639 provides that "[i]n addition to all other locations and courts in which such suit may be appropriate, workmen, laborers, clerks, and all other employees may sue their employers or hirers for any wages or salary due and owing in the district court of the parish where the work was performed."

### Whether the Trial Court is the Proper Venue for Mr. Murray's Suit

Reviewing Universal's Venue Exception *de novo,* we find the grounds for the objection of improper venue did not appear on the face of Mr. Murray's Petition, so Universal bore the burden of proving its exception by introducing

13

evidence to support its objection to the Orleans Parish Civil District Court being the proper forum for Mr. Murray's lawsuit. *See Senior*, 2024-0541, pp. 11-12, ___ So.3d at ___, 2025 WL 1155979, at *6 (citing *Chumley*, 46,479, 46,707, pp. 5-6, 80 So.3d at 42). Universal attached the LLC Agreement to its Venue Exception and pointed to Provision 14.15 as a valid and enforceable forum selection clause. However, while the LLC Agreement appears in the record, Universal did not properly and officially offer and introduce it at the hearing on its exception. Additionally, Mr. Murray did not offer and introduce any documents into evidence at the hearing. Accordingly, the trial court should not have considered the parties' exhibits in ruling on Universal's Venue Exception and legally erred in doing so.[9] Because the trial court legally erred, we conduct a *de novo* review.

Like the trial court, we are not to consider the parties' exhibits. Instead, we can only consider the allegations of Mr. Murray's Petition, which must be accepted as true. In terms of Mr. Murray's mandamus claim, Mr. Murray alleged in his Petition that Universal was a Louisiana limited liability company with its registered office in Orleans Parish. Because La. C.C.P. art. 42 establishes that "venue is proper at the 'home base' of the entity sued," Orleans Parish is the proper venue for Mr. Murray's mandamus claim based on his Petition. In terms of Mr. Murray's unpaid wages claim, as quoted above, La. R.S. 23:639 provides that venue in an unpaid wages case is proper where the employee performed his work; and Mr. Murray alleged in his Petition that he performed his work for Universal in Orleans Parish and that this is the "work [that] gives rise to the claim for unpaid wages being asserted." Reading Mr. Murray's Petition and La. R.S. 23:639 *in pari*

---

[9] Based on the transcript of the hearing, the trial court considered the LLC Agreement in arriving at its decision to sustain Universal's Venue Exception.

*materia*, we find Orleans Parish is also the proper venue for Mr. Murray's unpaid wages claim.

Accepting as true the allegations of Mr. Murray's Petition, the trial court (Orleans Parish Civil District Court) is the proper venue for Mr. Murray's mandamus and unpaid wages claims. Accordingly, we find the trial court erred in granting Universal's Venue Exception and we reverse the trial court's judgment in this regard.

## Jurisdiction Exception

### Standard of Review, Documents that Can be Considered, and Burden of Proof

Next, we consider the trial court's grant of Universal's Jurisdiction Exception. "The court's lack of jurisdiction over the person of the defendant" is one of the objections that a party raises by way of a declinatory exception. La. C.C.P. art. 925(A)(5). Regarding any factual findings underlying the trial court's ruling on an exception of lack of personal jurisdiction, an appellate court applies the manifest error standard of review. *Kel-Sea Adventures, LLC v. Contender Boats, Inc.*, 2024-0208, p. 6 (La. App. 1 Cir. 9/26/24), 405 So.3d 799, 805. However, "[t]he application of established rules of law to the facts" constitutes "a legal question, and thus, the legal issue of personal jurisdiction over a nonresident by a Louisiana court is subject to *de novo* review." *Id.* (citing *Bridges v. Mosaic Global Holdings, Inc.*, 2008-0113 (La. App. 1 Cir. 10/24/08), 23 So.3d 305, 314). *See also Jones v. St. Augustine High Sch.*, 2021-0474, 0475, pp. 2-3 (La. App. 4 Cir. 2/16/22), 336 So.3d 470, 473 (citing *Loeb v. Vergara*, 2020-0261, p. 78 (La. App. 4 Cir. 1/27/21), 313 So.3d 346, 392).

For the exception of a lack of personal jurisdiction, jurisprudence establishes that what the courts can consider in ruling on the exception and the plaintiff's

15

burden of proof depend on whether the trial court conducted a contradictory hearing. A hearing constitutes a contradictory one only if "live testimony is taken." *Jacobsen v. Asbestos Corp. Ltd.*, 2012-655, p. 7 (La. App. 5 Cir. 5/30/13), 119 So.3d 770, 776 (quoting *de Reyes v. Marine Mgmt. & Consulting, Ltd.*, 586 So.2d 103, 109 (La. 9/9/91)). Even if the parties orally argued the exception of lack of personal jurisdiction, without live testimony, this was not a contradictory hearing. *Id.* (first citing *Dahmes v. Champagne Elevators, Inc.*, 2003-0807, 0983 (La. App. 4 Cir. 3/3/04), 869 So.2d 904, 906; and then citing *Ruppert v. George Kellett & Sons, Inc.*, 2008-182 (La. App. 5 Cir. 9/30/08), 996 So.2d 501).

When the trial court does not conduct a contradictory hearing, "the court will decide the matter on a record comprised of 'pleadings, memoranda, and discovery depositions taken' in the matter.'" *Jacobsen*, 2012-655, pp. 6-7, 119 So.3d at 775-76 (quoting *de Reyes*, 586 So.2d at 109). *See also Johnson v. B&B Elec. Contractors*, 1996-0159, p. 5 (La. App. 4 Cir. 2/19/97), 689 So.2d 728, 730 (holding that "submission of a jurisdictional exception on briefs, affidavits and depositions is permissible" (citing *de Reyes*, 586 So.2d at 109)). Therefore, when no contradictory hearing takes place on the exception of lack of personal jurisdiction, it is permissible for the courts to consider the documents attached to the parties' memoranda in support of or in contravention of the exception even if the parties did not formally introduce the documents into evidence at the hearing. *See, e.g., Loeb v. Vergara*, 2020-0261, p. 81, 313 So.3d at 394 (considering a declaration and deposition testimony attached to the defendant-exceptor's exception); *Ohle v. Uhalt*, 2016-0569, pp. 8-9 (La. App. 4 Cir. 2/1/17), 213 So.3d 1, 7-8 (considering an affidavit attached to the defendant-exceptor's exception); *Jacobsen*, 2012-655, pp. 20-21, 119 So.3d at 783-84 (considering documents from

16

a research facility, a memo, and depositions attached to the plaintiff's opposition to the exception); *Broussard v. Diamond Aircraft Indus.*, Inc., 2010-1611, pp. 3, 7-8 (La. App. 1 Cir. 5/3/11), 65 So.3d 187, 189-91 (considering an affidavit submitted with the defendant-exceptor's exception); *Ruppert v. George Kellett & Sons, Inc.*, 2008-182, p. 11 (La. App. 5 Cir. 9/30/08), 996 So.2d 501, 508 (considering the entire "record" as established by what the parties filed in support of and in opposition to the exception, including an affidavit attached to the defendant-exceptor's exception); *Gazzier v. Columbia Transp. Co.*, 1995-1755, pp. 2-3 (La. App. 4 Cir. 5/29/96), 675 So.2d 826, 828-29 (considering documents attached to the plaintiffs' opposition).[10]

In terms of the burden of proof when the trial court does not conduct a contradictory hearing, "the burden o[n] the non-moving party is relatively slight and [the] allegations of the complaint and all reasonable inferences from the record are to be drawn in favor of the non-moving party." *Ohle v. Uhalt*, 2022-0818, p. 5 (La. App. 4 Cir. 7/6/23), 370 So.3d 1088, 1092 (quoting *de Reyes*, 586 So.2d at 109). *See also Loeb*, 2020-0261, p. 79, 313 So.3d at 393; *Jacobsen*, 2012-655, p. 7, 119 So.3d at 775-76; *Ruppert*, 2008-182, p. 11, 996 So.2d at 508; *Johnson*, 1996-0159, p. 5, 689 So.2d at 730; *Gazzier*, 1995-1755, p. 7, 675 So.2d at 830; *Hunt v.*

_____

[10] We note that in *Park West Children's Fund, Inc. v. Trinity Broadcasting Network, Inc.*, the Louisiana Third Circuit Court of Appeal held the trial court legally erred in considering exhibits attached to the parties' memoranda in support of and in opposition to the exception of lack of personal jurisdiction because the exhibits were not filed into evidence. 2013-444, pp. 4-5 (La. App. 3 Cir. 10/16/13), 156 So.3d 682, 686-87. Moreover, in *Witter v. Sanibel v. Yacht & Slip, LLC*, the Louisiana First Circuit Court of Appeal cited to *Park West Children's Fund, Inc.*, when holding that if "no evidence is presented at the hearing on a jurisdictional objection, the objection must be decided on the facts alleged in the petition." 2019-1031, p. 8 (La. App. 1 Cir. 6/24/20), 307 So.3d 1053, 1059. However, in light of the Louisiana Supreme Court's decision in *de Reyes* and its progeny listed in this Opinion, including some decisions rendered by this Court, we have determined that courts can consider documents attached to memoranda in support of or in opposition to an exception of lack of personal jurisdiction even if the parties did not formally offer those documents into evidence at the hearing on the exception.

*Schult Homes Grp.*, 1994-1592, p. 6 (La. App. 3 Cir. 5/3/95), 657 So.2d 124, 127.[11] In that instance, the "plaintiff only needs to make a *prima facie* showing that the court has jurisdiction under . . . Louisiana's long-arm statute." *Ohle*, 2022-0818, pp. 5-6, 370 So.3d at 1093 (citing *Ohle*, 2016-0569, p. 4, 213 So.3d at 5 n.4). *See also Moses v. Universal Ogden Servs.*, 16 F. Supp. 2d 680, 681 (E.D. La. 1998). "[T]he non-moving party is entitled to a reasonable inference in favor of finding jurisdiction." *Moses*, 16 F.Supp.2d at 681 (citing *de Reyes*, 586 So.2d at 109).

***Exercise of Personal Jurisdiction over a Nonresident Defendant***

"Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled." La. C.C.P. art. 1. Personal jurisdiction is one type of jurisdiction. *Senior*, 2024-0541, p. 17, ___ So.3d at ___, 2025 WL 1155979, at *8 (quoting *Tillis v. McNeil*, 2017-0673, p. 5 (La. App. 5 Cir. 5/30/18), 249 So.3d 303, 307). It "is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding." La. C.C.P. art. 6(A).

Louisiana Revised Statutes 13:3201 delineates when a Louisiana Court has personal jurisdiction over a nonresident defendant. It states, in pertinent part:

> A. A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
>
> (1) Transacting any business in this state.
>
> (2) Contracting to supply services or things in this state.

---

[11] Each of these cases also cites to *de Reyes* for this proposition.

18

. . . .

> B. In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States.

La. R.S. 13:3201. In discussing La. R.S. 13:3201, this Court has explained that "Louisiana's authority to exercise personal jurisdiction over non-residents is limited by the due process requirements of the Fourteenth Amendment to the United States Constitution." *Jones*, 2021-0474, 0475, p. 4, 336 So.3d at 474 (first citing U.S. Const. Amend. 14; and then citing La. R.S. 13:3201).

A two-prong due process test "must be satisfied before personal jurisdiction can be exercised." *Id.* (quoting *BioClin, BV v. MultiGyn USA, LLC*, 2012-0962, pp. 4-5 (La. App. 4 Cir. 11/5/13), 129 So.3d 633, 637). The first prong of the test is a consideration of whether the nonresident defendant has "minimum contacts with the forum state." *Id.* (internal quotation marks omitted). The minimum contacts prong of the test "is satisfied by a single act or actions by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws, such that the nonresident should reasonably anticipate being haled into court in the forum state." *Kel-Sea Adventures LLC*, 2024-0208, pp. 6-7, 405 So.3d at 805 (citing *Bridges*, 2008-0113, pp. 14-15, 23 So.3d at 315). This "'purposeful availment' requirement" guarantees "that the nonresident defendant will not be haled into a jurisdiction solely as a result of a random, fortuitous, or attenuated contact, or by the unilateral activity of another party or a third person other than the defendant." *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). In considering whether a nonresident defendant company has

minimum contacts, Louisiana courts consider whether the company is registered to do business in Louisiana; whether the company has any employees and customers in Louisiana; and whether the company conducts business in Louisiana. *Lewis v. Pine Belt Multipurpose Cmty. Action Acquisition Agency, Inc.*, 48,827, p. 14 (La. App. 2 Cir. 4/9/14), 138 So.3d 776, 784; *Broussard*, 2010-1611, pp. 6-7, 65 So.3d at 191; *Lifecare Hosps., Inc. v. B & W Quality Growers, Inc.*, 39,065, p. 4 (La. App. 2 Cir. 10/27/04), 887 So.2d 624, 628; *Bodden v. Zapata Gulf Marine Corp.*, 1995-2743, p. 4 (La. App. 4 Cir. 2/15/96), 673 So.2d 206, 209.

Under the minimum contacts prong of the due process test, jurisprudence differentiates "between general or all-purpose jurisdiction and specific or case-linked jurisdiction." *Jacobsen*, 2012-655, p. 13, 119 So.3d at 779 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011)). That is, for the purpose of determining whether the nonresident defendant has minimum contacts with the forum state, Louisiana law "divide[s]" personal jurisdiction "into two categories: general and specific." *Jones*, 2021-0474, 0475, p. 4, 336 So.3d at 474 (citing *Ohle*, 2016-0569, p. 6, 213 So.3d at 6). "General jurisdiction applies when the defendant's contacts with the state are unrelated to the lawsuit," yet "the defendant has engaged in continuous and systematic general business contacts with the forum state." *Id.* (internal quotation marks omitted) (first quoting *Swoboda v. Hero Decks*, 2009-1303, p. 3 (La. App. 4 Cir. 3/31/10), 36 So.3d 994, 997; and then quoting *Babcock & Wilcox v. Babcock Mexico*, 597 So.2d 110, 112 (La. App. 4th Cir. 1992)). "[S]pecific jurisdiction" exists "when the cause of action is related to or arises out of the defendant's contact with the state." *Id.* (quoting *Babcock & Wilcox*, 597 So.2d at 112).

The second prong of the due process test is whether the exercise of personal jurisdiction by the forum state would "violate the basic notions of fair play and substantial justice." *Jones*, 2021-0474, 0475, p. 4, 336 So.3d at 464 (quoting *BioClin, BV*, 2012-0962, pp. 4-5, 129 So.3d at 637). After "the plaintiff meets the burden of proving minimum contacts, a presumption of reasonableness of jurisdiction arises." *Kel-Sea Adventures LLC*, 2024-0208, p. 7, 405 So.3d at 806. Thereafter, "[t]he burden then shifts to the" nonresident defendant "to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum." *Id.* (citing *Bridges*, 2008-0113, p. 15, 23 So.3d at 315). Relevant considerations under the fundamental fairness issue include: "(1) the defendant's burden; (2) the forum state's interest; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest in furthering fundamental social policies." *Bridges*, 2008-0113, pp. 15-16, 23 So.3d at 315 (citing *Se. Wireless Network, Inc. v. U.S. Telemetry Corp.*, 2006-1736, pp. 5-6 (La. 4/11/07), 954 So.2d 120, 125).

### *Effect of Certain Contractual Provisions on Jurisdiction*

If they so choose, parties can contractually "agree in advance to submit to the [personal] jurisdiction of a given court" within a forum selection clause. *Senior*, 2024-0541, p. 17, ___ So.3d at ___, 2025 WL 1155979, at *8 (quoting *Lewis v. Townsend*, 47,536, p. 3 (La. App. 2 Cir. 12/12/12), 108 So.3d 184, 186; citing *Nat'l Equip. Rental v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964)). When parties do so, this does not necessarily limit causes of action arising out of the contract to the court therein specified. The effect of the provision

21

depends upon the wording. For example, even if the contract uses mandatory language like the word "shall" (e.g., "any court of competent jurisdiction situated in Chicago, Illinois, shall have jurisdiction over the person of the defendant"), such a provision "actually broadens the possible choice of forums by giving the parties another court in which they may pursue litigation," so "that it remains 'conceivable' that the action can be brought in a court other than the one(s) specified in the contract as having personal jurisdiction." *Senior*, 2024-0541, p. 18, ___ So.3d at ___, 2025 WL 1155979, at *8 (quoting *Am. Standard Leasing Co. v. Plant Specialties, Inc.*, 427 So.2d 555, 558 (La. App. 3d Cir. 1983)). That is, such wording does not specify that the listed court is the only one with jurisdiction. By contrast, "[a] forum-selection clause designating a foreign state's court as the *exclusive* forum for any contractual dispute between the parties essentially amounts to the conventional elimination or mutual waiver of such jurisdiction in all courts other than those designated." *Vallejo Enter., L.LC. v. Boulder Image, Inc.*, 2005-2649, p. 3 (La. App. 1 Cir. 11/3/06), 950 So.2d 832, 835 n.1 (emphasis added).

Jurisprudence establishes that a forum selection clause is "a provision in a contract that mandates a particular state, county, parish, or court as the proper venue in which the parties to an action must litigate any future disputes regarding their contractual relationship." *Senior*, 2024-0541, p. 10, ___ So.3d at ___, 2025 WL 1155979, at *5 (quoting *Shelter Mut. Ins. Co. v. Rimkus Consulting Grp., Inc. of La.,* 2013-1977, p. 4 (La. 7/1/14), 148 So.3d 871, 873). The Louisiana Supreme Court has held "contractual 'forum selection clauses are generally enforceable and are not *per se* violative of public policy in Louisiana.'" *Id.* (quoting *Shelter Mut. Ins. Co.*, 2013-1977, p. 12, 148 So.3d at 878). The reason "[f]orum selection clauses are favored" is "because the elimination of uncertainties relative to the

location of litigation by agreement in advance [i]n an acceptable forum to both parties is an indispensable element of trade, commerce, and contracting." *Id.* at p. 11, ___ So.3d at ___, 2025 WL 1155979, at *5 (quoting *Ameriprint, LLC v. Canon Sols. Am., Inc.*, 2021-0094, p. 3 (La. App. 5 Cir. 5/24/21), 2021 WL 2093283, at *2). Therefore, Louisiana courts should enforce forum selection clauses "unless the resisting party can clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching or that enforcement would contravene a strong public policy of the forum in which the suit is brought." *Id.* Thus, the party who challenges a forum selection clause bears a heavy burden of proof. *Id.* (quoting *Barcelona v. Sea Victory Mar., Inc.*, 619 So.2d 741, 745 (La. App. 4th Cir. 1993). *See also Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991)). In light of the foregoing, Louisiana courts deem "forum selection clauses unenforceable and against public policy only" in "very limited circumstances." *Id.* (quoting *Ameriprint, LLC*, 2021-0094, p. 3, 2021 WL 2093283, at *2). Louisiana Revised Statutes 23:921(A)(2) constitutes one such circumstance. It provides:

> The provisions of every employment contract or agreement, or provisions thereof, by which any foreign or domestic employer or any other person or entity includes a choice of forum clause or choice of law clause in an employee's contract of employment or collective bargaining agreement, or attempts to enforce either a choice of forum clause or choice of law clause in any civil or administrative action involving an employee, shall be null and void except where the choice of forum clause or choice of law clause is expressly, knowingly, and voluntarily agreed to and ratified by the employee after the occurrence of the incident which is the subject of the civil or administrative action.

La. R.S. 23:921(A)(2). Thus, La. R.S. 23:921(A)(2) prohibits forum selection clauses in employment contracts.

### *Whether the Trial Court Has Personal Jurisdiction over Mr. Murray's Suit*

As explained earlier in this Opinion, the trial court held a hearing on Universal's Jurisdiction Exception, at which the parties orally argued but no live testimony was taken. Because no live testimony was taken, this was not a contradictory hearing. Thus, while the parties did not introduce any documents into evidence at the hearing, we can nonetheless consider the documents the parties attached to their memoranda in support of or in opposition to Universal's Jurisdiction Exception. Moreover, because the hearing was not a contradictory one, Mr. Murray's burden of proof was "relatively slight," and he had only to make a *prima facie* showing that the trial court had personal jurisdiction. In addition, he was entitled to a reasonable inference in favor of finding jurisdiction, with the allegations of his Petition and all rational interpretations from the record to be drawn in his favor.

Because we find it has bearing on the trajectory of our discussion and the outcome of this appeal, we now separate Mr. Murray's unpaid wages claim from his mandamus claim. In our analysis, we will first determine the effect, if any, of Provision 14.15 of the LLC Agreement. Provision 14.15 states that the parties to the LLC Agreement "expressly submit[] to the exclusive jurisdiction of the federal and state courts located in the City of Atlanta, State of Georgia." Per *Vallejo*, if Provision 14.15 is valid and enforceable, this would render the courts of Atlanta as the only courts with jurisdiction over Mr. Murray's suit, thereby eliminating the need for us to perform the two-prong due process analysis to determine if the trial court has personal jurisdiction.

**Unpaid Wages Claim**

As it did before the trial court, Universal urges to this Court that Provision 14.15 of the LLC Agreement is a valid and enforceable forum selection clause applicable to all of Mr. Murray's claims. That is, Universal asserts that Mr. Murray is merely an Operator Member "suing for rights he was allegedly entitled to under the [LLC] Agreement" and that his "claims are not based on an employer/employee relationship." Countering, Mr. Murray's brief focuses on his unpaid wages claim and, to this end, states his "Petition clearly present[ed] claims based upon [his] status as an employee." In his Opposition filed with the trial court, Mr. Murray asserted that because the LLC Agreement required him to sign the Confidentiality Agreement, this meant the agreements were "part and parcel" of each other, such that Provision 14.15 (of the LLC Agreement) constituted a forum selection clause in his employment agreement (the Confidentiality Agreement). In his brief to this Court, Mr. Murray maintains his contention that Louisiana law prohibits a forum selection clause in an employment contract, but his description of the Agreements differs. Mr. Murray still alleges the Confidentiality Agreement was an employment agreement (he states it "specifically identifies [him] as an employee"), but he now contends the Confidentiality Agreement "contains a forum selection clause identical to [Provision 14.15] of the" LLC Agreement.

As previously stated and as Mr. Murray correctly argues, Louisiana law, specifically La. R.S. 23:921(A)(2), prohibits forum selection clauses in employment contracts. It constitutes one of the "very limited circumstances" in which forum selection clauses are deemed unenforceable and against public policy in Louisiana. Thus, if Mr. Murray's contentions are correct that the Confidentiality

Agreement was his employment agreement and that it contains a section identical to Provision 14.15, then his argument against enforcing it would have merit. The problem is that the Confidentiality Agreement does not appear in the record before this Court. As recently explained by this Court, as an appellate court, we are "a court[] of record and may not review evidence that is not in the appellate record." *Bombace v. Starr Indem. & Liab. Co.*, 2025-0037, p. 11 (La. App. 4 Cir. 6/24/25), ___ So.3d ___, ___, 2025 WL 1742593, at *6 (quoting *Kimball v. Kamenitz*, 2021-0101, p. 22 (La. App. 4 Cir. 10/26/21), 331 So.3d 474, 489). Without the Confidentiality Agreement, we cannot consider the merits of Mr. Murray's argument that it was his employment agreement and that it contains a prohibited forum selection clause.

Turning to Universal's assertions, we find the LLC Agreement has no bearing on Mr. Murray's unpaid wages claim. Though Mr. Murray stated in his Petition that he—as an Operator Member of Universal—agreed to defer his wages during a time of financial stress for the company, his entitlement to said wages was based on his status as an employee, not as an Operator Member. His salary was a right owed to him as an employee. Therefore, any legal recourse he may have for not timely receiving his past due wages was based on his employment relationship with Universal. Because the LLC Agreement established Mr. Murray's status as an Operator Member of Universal, not his status as an employee entitled to wages, we find it is wholly inapplicable to his unpaid wages claim. The LLC Agreement does not refer to Mr. Murray's employment with Universal or any of his rights or obligations stemming from his employment. Thus, we disagree with Universal's contention that Provision 14.15 of the LLC Agreement applies to Mr. Murray's

unpaid wages claim so as to establish whether the trial court has personal jurisdiction.

Without the Confidentiality Agreement and with the LLC Agreement inapplicable, we consider whether Mr. Murray met his relatively slight burden of proving the trial court has personal jurisdiction. The LLC Agreement stated that Universal was "formed as a limited liability company under the laws of the State of Delaware . . . by the filing of the Company's Certificate of Formation . . . with the Delaware Secretary of State." For the trial court to exercise personal jurisdiction over Universal—a Delaware company per the LLC Agreement—it would have to do so under Louisiana's Long Arm Statute, and the exercise of personal jurisdiction would have to comport with the two-prong due process test. In terms of whether Universal had minimum contacts with Louisiana, Mr. Murray submitted the certificate from the Louisiana Secretary of State, which delineated that Universal is registered to do business in Louisiana, specifically in New Orleans which is in Orleans Parish. In his Petition, Mr. Murray alleged that he was an employee of Universal and performed his work in Orleans Parish in Louisiana. As to whether the company conducts business or provides services in Louisiana, Mr. Murray alleged in his Opposition that Universal operates parking lots in New Orleans and thus has customers here. In light of the foregoing we find Mr. Murray established that Universal has minimum contacts with Louisiana, particularly Orleans Parish, for the exercise of general jurisdiction by the trial court: Universal has purposefully availed itself of the privilege of conducting activities there and should reasonably have anticipated being haled into court there.

Because Mr. Murray met the burden of proving minimum contacts, a presumption of reasonableness of jurisdiction arose; and the burden shifted to

Universal to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by its minimum contacts with the forum. We find Universal failed to meet this burden. In fact, Universal has not pointed to any reason why the assertion of personal jurisdiction by the trial court would be unreasonable in light of traditional notions of fair play and substantial justice. Rather, Universal's focus in its Jurisdiction Exception, at the hearing, and in its brief to this Court was that Provision 14.15 constitutes a valid forum selection clause that should be enforced thereby rendering the grant of the exception of lack of personal jurisdiction the proper result. However, as determined above, Provision 14.15 has no bearing on whether the trial court has personal jurisdiction over Mr. Murray's unpaid wages claim.

In sum, we find the trial court erred in granting Universal's Jurisdiction Exception regarding Mr. Murray's unpaid wages claim and we reverse that part of its judgment.

**Mandamus Claim**

In considering the trial court's grant of Universal's Jurisdiction Exception with regard to Mr. Murray's mandamus claim, we do so mindful of the fact that we have already held the trial court erred in granting Universal's Venue Exception regarding this claim because Mr. Murray's Petition—the allegations of which had to be accepted as true because the parties did not offer any exhibits into evidence—established Orleans Parish as the proper venue. As recently explained by this Court, "Jurisdiction is a separate and distinct legal concept from venue." *Senior*, 2024-0541, p. 16, ___ So.3d ___, 2025 WL 1155979, at *8 (quoting *Luffey ex rel. Fredricksburg Props. of Tx., LP v. Fredericksburg Props. of Tx., LP*, 37,591, p. 5

(La. App. 2 Cir. 12/10/03), 862 So.2d 403, 406). Venue is "the place where judicial authority may be exercised," while "jurisdiction relate[s] to 'the [court's] power to adjudicate." *Id.* at p. 18, ___ So.3d at ___, 2025 WL 1155979, at *8 (second alteration in original) (quoting *Luffey*, 37,591, p. 6, 862 So.2d at 406 n.3). A court of proper venue must also have jurisdiction to adjudicate a case. *See generally Tillis*, 2017-0673, 249 So.3d 303.

As with the unpaid wages claim, we first consider the effect, if any, of Provision 14.15 of the LLC Agreement. Provision 14.15 of the LLC Agreement constituted a forum selection clause because it was "a provision in a contract that mandate[d] a particular state, county, parish, or court [namely, the federal and state courts located in the City of Atlanta, State of Georgia] as the proper venue in which" Mr. Murray and Universal had to "litigate any . . . disputes regarding their contractual relationship." *Senior*, 2024-0541, p. 12, ___ So.3d at ___, 2025 WL 1155979, at *6 (quoting *Shelter Mut. Ins. Co.*, 2013-1977, p. 4, 148 So.3d at 873). Mr. Murray, had to demonstrate that Provision 14.15 was invalid or unenforceable for some reason. He argued before the trial court and reiterates in his brief to this Court that the forum selection clause was unenforceable as a violation of Louisiana public policy, specifically La. R.S. 23:921(A)(2) which prohibits forum selection clauses in employment contracts, as discussed in the previous section. While Mr. Murray is correct that La. R.S. 23:921(A)(2) prohibits forum selection clauses in employment contracts, his argument is nonetheless without merit regarding his mandamus claim. Any right Mr. Murray may have to a mandamus to access Universal's financial records is based on Provision 11.3 of the LLC Agreement. Thus, his potential right to a mandamus comes from his status as a signatory to the LLC Agreement as an Operator Member of Universal, not his (prior) employment

status with Universal. Not only did Mr. Murray sign the LLC Agreement in his capacity as an Operator Member, but, having reviewed the LLC Agreement in its entirety, we find no way it can or should be construed as an employment agreement. Rather, it constitutes the organizational and operating agreement amongst the various Operator Members of Universal and delineates matters such as their ownership interests, rights to distributions, capital contributions, and taxes. Moreover, we find nothing in the record that demonstrates Provision 14.15 was unreasonable, unjust, or invalid, and we find nothing establishing that it contravenes the public policy of this state. Therefore, we find it should be enforced as written.

As written, Provision 14.15 designates the courts of Atlanta as the only courts with personal jurisdiction over Mr. Murray's mandamus claim; and it eliminates such jurisdiction in all other courts, including the trial court. Accordingly, we find the trial court correctly granted Universal's Jurisdiction Exception with respect to Mr. Murray's mandamus claim, and we affirm its judgment in that regard. However, as stated previously, a court of proper venue must also have jurisdiction to adjudicate a case. *See generally Tillis*, 2017-0673, 249 So.3d 303. Thus, our holding that the trial court was a proper venue for Mr. Murray's mandamus claim but does not have personal jurisdiction over his mandamus claim means the trial court is not the appropriate court to adjudicate that claim.

**Dismissal Without Prejudice of Mr. Murray's Petition**

Finally, we consider that part of the trial court's judgment that dismissed with prejudice Mr. Murray's Petition. At this juncture, we have thus far held the trial court is a court of proper venue for Mr. Murray's mandamus claim based on

30

his Petition but does not have personal jurisdiction over Mr. Murray's mandamus claim because of Provision 14.15 of the LLC Agreement. Without jurisdiction, the trial court is not the appropriate court to adjudicate that claim. With regard to Mr. Murray's unpaid wages claim, we have thus far held the trial court is a court of proper venue and has personal jurisdiction. It is the appropriate court to adjudicate that claim. We reversed the trial court's grant of Universal's Venue Exception with regard to Mr. Murray's mandamus and unpaid wages claims; reversed the trial court's grant of Universal's Jurisdiction Exception with regard to Mr. Murray's unpaid wages claim; and affirmed the trial court's grant of Universal's Jurisdiction Exception with regard to Mr. Murray's mandamus claim.

In this latter regard, we must determine how to proceed in light of our affirmation of the grant of Universal's Jurisdiction Exception concerning Mr. Murray's mandamus claim and conclusion that the trial court is not the appropriate court to rule on that claim. Regarding the "[e]ffect of sustaining [a] declinatory exception," La. C.C.P. art. 932(A) provides:

> When the grounds of the objections pleaded in the declinatory exception may be removed by amendment of the petition or other action of plaintiff, the judgment sustaining the exception shall order the plaintiff to remove them within the delay allowed by the court; if the court finds, on sustaining the objection that service of citation on the defendant was not requested timely, it may either dismiss the action as to that defendant without prejudice or, on the additional finding that service could not have been timely requested, order that service be effected within a specified time.

In the matter *sub judice*, because our basis for sustaining Universal's Jurisdiction Exception only had bearing on Mr. Murray's mandamus claim, not his unpaid wages claim, the grounds can be removed by amendment of Mr. Murray's Petition. Accordingly, we conclude the trial court should have allowed Mr. Murray to amend his Petition to remove the mandamus claim rather than dismissing his

Petition outright. Therefore, we vacate the trial court's dismissal of Mr. Murray's Petition and remand this matter with instructions to the trial court to provide Mr. Murray with the opportunity to amend his Petition.

**DECREE**

For the foregoing reasons, we reverse the trial court's August 28, 2024 judgment insofar as it granted Universal's Venue Exception; reverse the trial court's judgment insofar as it granted Universal's Jurisdiction Exception concerning Mr. Murray's unpaid wages claim; and affirm the trial court's judgment insofar as it granted Universal's Jurisdiction Exception regarding Mr. Murray's mandamus claim. Further, we vacate the trial court's dismissal with prejudice of Mr. Murray's Petition and remand this matter with instructions.

**REVERSED IN PART; AFFIRMED IN PART; VACATED IN PART AND REMANDED WITH INSTRUCTIONS**